Tynan v. American Airlines                04-CV-335-SM  09/09/05
                       UNITED STATES DISTRICT COURT

                         DISTRICT OF NEW HAMPSHIRE


Don M. Tynan,
      Plaintiff

      v.                                    Civil No. 04-cv-335-SM
                                            Opinion No. 2005 DNH 127
American Airlines, Inc.
Pilot Retirement Benefit Program,
      Defendant


                              **O R D E R**


       Plaintiff, a retired airline pilot, brings suit pursuant to section 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a) ("ERISA"), challenging the defendant retirement plan's decision to recoup excess benefit payments that were mistakenly paid to him.  Plaintiff says the plan's decision to recoup "was both arbitrary and capricious."  Complaint at para. 7.  Defendant moves for summary judgment, asserting that its decision to recover overpayments (and the means by which it plans to recover them) was neither arbitrary nor capricious. Plaintiff objects.  For the reasons given below, defendant's motion for summary judgment is granted.

**Standard of Review**

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

**Background**

Plaintiff was employed by American Airlines from 1965 until his retirement in 1984. He participated in the American Airlines, Inc., Pilot Retirement Benefit Program (the "Program"). Upon his retirement, plaintiff began receiving retirement benefits from two plans administered by the Program: the Fixed

Income Plan and the Variable Income Plan.  Plaintiff and his wife subsequently divorced and, in December of 1996, the Program received a state-court qualified domestic relations order ("QDRO") awarding one-half of plaintiff's benefits under each plan to his former wife.  Accordingly, in February of 1997, the Program notified plaintiff that it had received a copy of the QDRO and that it met the requirements of the Retirement Equity Act of 1984.  Defendant's Exhibit B (Part 3) at AA-120.  Then, in March of 1997, the Program notified plaintiff that, pursuant to the QDRO, monthly benefit checks sent to him under each plan would be reduced by fifty percent.  Included with that letter was a statement disclosing exactly how much he should expect to receive each month from each plan.  Defendant's Exhibit B (Part 3) at AA-0122 through AA-0124.

In March of 1997, plaintiff received the proper (reduced) benefit checks from both plans.  Thereafter, however, due to an error on the part of the Program (or its bank), plaintiff began receiving checks in the original (unreduced) amount from the Variable Income Plan; the benefit checks he received from the Fixed Income Plan, however, continued to be reduced by fifty

percent.  The monthly payments made by the two plans to plaintiff's former wife appear not to have been adversely affected.  That is to say, she has consistently received monthly checks from each plan that properly reflect her entitlement to fifty percent of plaintiff's benefits.

Plaintiff did not report the payment error to the Program.  And, the Program did not notice the error for approximately six years, at which point an audit revealed that it had been over-paying plaintiff as well as two other beneficiaries of the Program.  During that six-year period, plaintiff received $118,150.90 in overpayments from the Variable Income Plan.

Once the Program became aware of the overpayments, it notified plaintiff of the error.  It then calculated the total amount of those overpayments and suspended payments to him from the Variable Income Plan in an effort to recover the sums paid in error by offset.  Although it claims it was legally entitled to do so, the Program did not suspend any payments to plaintiff from the Fixed Income Plan, nor did it sue him in an effort to recover the overpaid amounts in a lump sum.  See Defendant's Reply

4

Memorandum at 7 n. 2.  The Program says it decided to recover the overpayments by suspending payments under the Variable Income Plan after taking into account: (1) plaintiff's age (72); (2) the amount that he was scheduled to receive each month from the Variable Income Plan ($1,300); (3) his life expectancy; (4) the amount of time it would take to recover the sums erroneously paid to him (approximately seven years); and (5) the effect its planned recoupment efforts would have on both the Variable Income Plan and plaintiff.

    Plaintiff administratively appealed the decision to suspend payments under the Variable Income Plan to the Pension Benefit Administration Committee.  After reviewing plaintiff's appeal, the Committee rejected his assertion that he was unaware of the payment error.  Instead, it concluded that he knew he was receiving twice the benefits to which he was entitled under the Variable Income Plan and, nevertheless, failed to report the error to the Program.

> In light of the information provided to Mr. Tynan regarding his QDRO and the Pension Administration Benefit Authorization, it is evident that American Airlines notified Mr. Tynan of his reduced monthly pension benefit payment.  Yet, when he continued to

>     receive twice that amount for six years, he chose to
>     accept the overpayment and did not report it to the
>     Company.

Defendant's Exhibit B (Part 1), at AA-0007. Accordingly, plaintiff's appeal was denied. This proceeding ensued.

## Discussion

I.  <u>Plaintiff's Equitable Argument</u>.

The parties agree that the Program documents vest the Plan Administrator with discretionary authority to determine eligibility for benefits and to construe the terms of the Program. <u>See</u> Defendant's Exhibit A (Part 4) at AA-0296, Section 16.7 of the Program document. Accordingly, this court applies the familiar "arbitrary and capricious" standard to the Plan Administrator's decision to recoup the over-payments by suspending plaintiff's benefits under the Variable Income Plan. That same deferential standard of review applies to the factual determinations upon which the Program relied in reaching that decision. <u>See generally</u> <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989). Under the applicable standard of review, then, the administrator's decision "will not be disturbed if reasonable." <u>Id</u>. at 111.

The pertinent language of the Program's governing document provides that:

> <u>If any error</u>, including an error resulting from any statement made or omitted to be made by any Member, surviving spouse or Beneficiary in any document or other information required to be submitted in connection with the Plan, <u>shall result in the payment to any individual or entity of more or less than such person would have received but for such error</u>, the Administrator <u>may correct such error and adjust payments hereunder</u> as far as possible, in such manner that the Actuarial Equivalent of the benefit to which such person was correctly entitled shall be paid.

Defendant's Exhibit A (Part 4) at AA-296, Section 16.8 of the Program document (emphasis supplied).  Plaintiff does not dispute that the overpayments made to him by the Variable Income Plan total $118,150.90.  Nor does he challenge defendant's right, under both the terms of the Program documents and applicable trust law, to seek recoupment.  <u>See generally</u> <u>Hoffa v. Fitzsimmons</u>, 673 F.2d 1345, 1354 (D.C. Cir. 1982) ("[W]hen a trustee overpays a beneficiary the trustee is entitled to recover the excess payment, even when it was the product of unilateral mistake on the part of the trustee.") (citations omitted).

Nevertheless, plaintiff says he should not have to repay the Program for the sums erroneously paid to him or, at the very least, that those monies should be recovered in a more "equitable" manner.[1]  See Plaintiff's memorandum (document no. 9) at 1 ("The question before the Court is not whether the Defendant has a legal right to seek recoupment, but whether the method and manner of recoupment implemented is equitable.").  In support of that position, plaintiff invokes an equitable exception to the plan's legal right to recoup:

> [R]ecovery [of excess benefits paid in error] is precluded if the beneficiary, in reliance on the correctness of the amounts of benefits, changes his position so that it would be inequitable to compel him to make restitution.

Plaintiff's memorandum at 2 (citing Thorn v. U.S. Steel & Carnegie Pension Fund, No. CV-P-1829-S, slip op. at 3 n.6 (M.D. Ala. 1983) and Restatement (Second) Trusts § 254, cmt. e).

This case is somewhat atypical in that plaintiff acknowledges the Program's legal entitlement to seek

---

[1]  Plaintiff does not, however, suggest what he believes would be a more equitable repayment plan.

reimbursement of the excess benefits paid to him in error, but claims principles of equity foreclose (or, at a minimum, limit) such recovery, given the particular circumstances of this case. Along those lines, plaintiff points out that: (1) the amount of the overpayments made to him is substantial and recovering those sums, even if done over the course of several years, would place an undue financial strain on him in retirement; (2) despite the Program's conclusion to the contrary, he maintains that he never realized that he was being overpaid by the Variable Income Plan; and (3) he reasonably relied upon the Program to insure that payments made to him were correct. In short, plaintiff asserts that it would be unfair to allow the Program to recover the overpayments in the manner it has selected and, therefore, he says equity should intervene to prevent such a result.[2]

---

[2] Plaintiff does not advance any equitable defenses to the Program's effort to recover the excess benefits mistakenly paid to him, such as laches (i.e., unreasonable delay once the overpayments were discovered) or equitable estoppel (i.e., the plan's knowingly false representation of the benefits to which plaintiff was entitled, with the intent to induce reliance thereon). But, that failing is not necessarily dispositive. See, e.g., Texaco Puerto Rico, Inc. v. Dept. of Cons. Affairs, 60 F.3d 867, 878 (1st Cir. 1995) ("[A]s part of balancing the equities, the court looks at the conduct of both parties and the potential hardships that might result from a judicial decision either way. From a practical standpoint, then, even when an equitable defense does not bar the claim, the total balance of

II.  ERISA and Federal Courts' Equitable Powers.

Plaintiff asserts that the Program's decision to suspend his payments under the Variable Income Plan until all excess payments are recouped by offset was arbitrary and/or capricious.  Thus, he couches his argument in familiar ERISA terms.  But, at the same time, he acknowledges that the plan is entitled (under both the Program documents and applicable trust law) to recover the sums that were paid to him in error.  So, rather than challenging the Program's decision on legal grounds, he has chosen to challenge it on equitable grounds.  Thus, it would seem that what plaintiff really seeks is relief in the nature of an injunction precluding the plan from exercising (or at least limiting the exercise of) its right to recover the overpayment.  See generally 29 U.S.C. § 1132(a)(3) (authorizing an ERISA-governed plan beneficiary to sue the plan to obtain "other appropriate equitable relief.").

The scope of this court's equitable authority in the ERISA context is not well-defined.  It would appear, however, to extend to the issuance of injunctive relief of the type plaintiff

---

equities and hardships might do so.") (citations and internal punctuation omitted).

(implicitly) seeks. See generally Mertens v. Hewitt Assocs., 508 U.S. 248 (1993) (narrowly interpreting the phrase "other appropriate equitable relief," as used in 29 U.S.C. § 1132(a) to include only "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution . . . ).") (emphasis in original). See also Wells v. U.S. Steel & Carnegie Pension Fund, Inc., 950 F.2d 1244, 1251 (6th Cir. 1991) ("Although the Plan language permits recoupment, this court is concerned with the possible inequitable impact recoupment may have on the individual retirees. . . . We thus remand this case to the district court to consider whether, under principles of equity or trust law, relief is unwarranted); Butler v. Aetna U.S. Healthcare, Inc., 109 F. Supp. 2d 856, 862 (S.D. Ohio 2000) ("[W]ithout question, the plan grants [defendant] a *legal* right to withhold [plaintiff's] entire monthly benefit award until it recoups the overpayment caused by her retroactive receipt of Social Security Disability benefits . . . [H]owever, . . . *equitable* principles may limit an ERISA fiduciary's legal right to recoup an overpayment of benefits.") (emphasis in original). So, for purposes of resolving plaintiff's claim, the court assumes it has the equitable authority to enjoin the

Program from recovering the excess benefit payments erroneously made to plaintiff, or recovering them in a particular manner.

Turning to the merits, it is apparent on this record that plaintiff has failed to demonstrate that he is entitled to such equitable relief.  The Program, through the Pension Benefit Administration Committee, supportably and plausibly concluded that plaintiff was well aware of the continuing overpayments but elected not to report them to the Program, choosing instead to retain the benefit of the Program's obvious error.  The record before the Committee supports that decision, particularly given the fact that: (1) plaintiff was notified in writing of the precise amount by which his benefits under each plan would be reduced; and (2) after one month of correct (reduced) benefit payments, those under the Variable Income Plan reverted to their full, unreduced amount, while those under the Fixed Income Plan continued to be properly reduced by fifty percent – a situation that could not have escaped plaintiff's notice.  Nothing in plaintiff's filings, except his general denial of any knowledge of the error, undermines the Program's conclusion that he was aware of the payment error but chose to remain silent.

Consequently, the court cannot find that the Program acted arbitrarily or capriciously when it concluded that plaintiff <u>was</u> aware that, each month for six years, he was receiving twice the amount that he should have been receiving from the Variable Income Plan while receiving a benefit reduced by half from the Fixed Income Plan and, nevertheless, chose not to report that error.  In turn, that supportable factual finding precludes plaintiff from invoking principles of equity in an effort to defeat the Program's legitimate efforts to recoup funds properly belonging to the Variable Income Plan.

For equity to intervene on plaintiff's behalf in a case such as this, at least two related elements would have to be present. First, plaintiff's reliance on the Program to send him the correct amount each month, and the related assumption that he was entitled to the full amount of the payments he received, would have to be reasonable.  Neither assumption is reasonable.  On two occasions (February 6 and March 3, 1997), plaintiff was notified that all future monthly benefits would be reduced as a result of the QDRO.  In the latter communication, the Program provided plaintiff with an itemized statement, specifically notifying him

of the reduced amount he should expect to receive each month from both the Fixed and Variable Income Plans.  Given that detailed level of information, it was not reasonable for plaintiff to have remained silent when, after one month of correct payments, he began (and continued) receiving <u>twice</u> the proper amount from the Variable Income Plan, despite the fact that his benefits under the Fixed Income Plan continued at one-half of the previous level.

   Second, for plaintiff to invoke principles of equity to block reimbursement, he must appear before the court with "clean hands."  <u>See, e.g.</u>, <u>Texaco Puerto Rico</u>, 60 F.3d at 880 ("It is old hat that a court called upon to do equity should always consider whether the petitioning party has acted in bad faith or with unclean hands.").  Given his knowledge of the Program's mistake, as plausibly and supportably found by the Committee, and given the fact that he did nothing to notify the Program of the continuing error, choosing instead to accept the benefit of the erroneous payments, plaintiff does not have "clean hands" in this matter.

**Conclusion**

In light of the foregoing, the court concludes that the Program did not act arbitrarily or capriciously when it decided to suspend plaintiff's monthly benefits under the Variable Income Plan until the sums erroneously paid to plaintiff are recovered. In fact, because the Program might well have sought recovery of those funds in a lump sum, rather than over time, its decision is fairly characterized as reasonable.

It goes without saying that plaintiff would prefer that the Program recover the sums owed over a longer period of time (if at all), thus imposing less of a financial strain upon him.  But, the Program's decision to recover the overpayments over the course of seven years, rather than in a lump sum and without suspending his monthly benefits under the Fixed Income Plan, exhibits appropriate sensitivity to his current circumstances, and demonstrates a reasonable effort to balance the Plan Administrator's fiduciary duty to the Program's members in general (i.e., the obligation to recover the overpayments for the benefit of the trust and all its beneficiaries) with its desire to minimize the economic hardship felt by plaintiff in repaying

what he unquestionably owes.  See generally Hoffa 673 F.2d at 1354 n.27 ("It thus appears that, in compelling overpaid beneficiaries to restore the trust res the excess amount, courts are primarily concerned with possible inequity to other beneficiaries.").[3]

Finally, while the court might, under appropriate circumstances, possess equitable authority to enjoin an ERISA-governed plan from recovering excess benefit payments erroneously made to a plan beneficiary, this is not a case in which the exercise of that authority would be appropriate.  In the end, the question posed by this case is whether the financial burden caused by the overpayments made by the Program, but knowingly

---

[3] Parenthetically, the court notes that in Hoffa, the Court of Appeals for the Sixth Circuit pointed out that defendants had, pursuant to an indemnification agreement with the plan, already made the plan whole for the overpayments at issue.  Thus, regardless of the outcome of that litigation, no beneficiary of the trust would be harmed, because the plan itself would not incur any loss, nor would it reap any windfall.  In this case, however, plaintiff has not pointed to anything suggesting that a third party has made (or will make) the Program whole, should it be unable to recover the overpayments made to plaintiff.  Thus, if this court were to enjoin the Program from collecting those sums from plaintiff, the other beneficiaries of the Variable Income Plan would be adversely affected to some degree, albeit minimally.

retained by plaintiff, should be borne by plaintiff or the other beneficiaries of the plan.  Principles of equity dictate that plaintiff bear that burden.  To determine otherwise, would condone unjust enrichment.

Defendant's motion for summary judgment (document no. 8) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

September 9, 2005

cc:  Stanley H. Robinson, Esq.
     Daniel E. Will, Esq.
     Kevin L. Wright, Esq.